IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

VINCE WILLIAM RAZO,              )        CIV. NO. 09-00462 SOM-KSC
#A4015368,                       )
                                 )
          Petitioner,            )        FINDINGS AND RECOMMENDATION
                                 )        TO DENY PETITION
     vs.                         )
                                 )
T. THOMAS,                       )
                                 )
          Respondent.            )
_____ )

### FINDINGS AND RECOMMENDATION TO DENY PETITION

Before the court is pro se Petitioner Vince William

Razo's petition for writ of habeas corpus (Petition) brought

under to 28 U.S.C. § 2254, and referred to this court pursuant to

28 U.S.C. § 636(b).  For the following reasons, the court FINDS

that the Petition is without merit and RECOMMENDS that it be

DENIED with prejudice.

### I. BACKGROUND

**A.   Trial**

On March 23, 2004, a jury of the Circuit Court of the

Second Circuit, State of Hawaii (circuit court), found Razo

guilty of Promoting a Dangerous Drug in the Second Degree

(PDD2)(possession of at least 1/8 ounce of methamphetamine)

(Count 1);[1] Prohibited Acts Related to Drug Paraphernalia (Count

_____

[1]*See* Hawaii Revised Statutes (HRS) § 712-1242(1)(b)(i)
(1993).

2);[2] Promoting a Detrimental Drug in the Third Degree (PDD3) (possession of marijuana) (Count 3);[3] and Attempted Promoting a Dangerous Drug in the First Degree (Attempted PDD1) (Count 4).[4] On May 24, 2004, the circuit court issued an amended final judgment of conviction and sentence, merging Count 1 with Count 4, and sentencing Razo to twenty years imprisonment on Count 4, five years imprisonment on Count 2, and thirty days imprisonment on Count 3, to run concurrently. (Resp.'s Ex. R.)

**B.    Direct Appeal**

Razo appealed, claiming that jury instructions #19 and #26, defining PDD2 and Attempted PDD1, were erroneous and that there was insufficient evidence to sustain his Attempted PDD1 conviction. Razo did not challenge the convictions or sentences imposed on Counts 2 and 3.

On September 8, 2006, the Hawaii Intermediate Court of Appeals (ICA) affirmed Razo's conviction. The ICA held that: (1) in light of Razo's and other testimony and evidence adduced at trial, the evidence was sufficient to support the Attempted PDD1 conviction; (2) the Attempted PDD1 jury instruction #26, although not endorsed by the ICA, was nonetheless sufficient and any error

---

[2]*See* HRS § 329-43.5(a) (1993).

[3]*See* HRS § 712-1249(1) (1993).

[4]*See* HRS § 705-500 (1993) & § 712-1241(1)(b)(ii)(A) (Supp. 2003).

was harmless beyond a reasonable doubt; and (3) although the PDD2 jury instruction #19 was erroneous, the error was harmless beyond a reasonable doubt because (a) Razo testified that the substance found in his backpack was more than 1/8 of an ounce of methamphetamine; and (b) the PDD2 charge was merged with the Attempted PDD1 charge, which the court had affirmed, rendering the PDD2 jury instruction challenge moot.  The Hawaii Supreme Court denied *certiorari* on January 29, 2007.

## C.  Rule 40 Petition for Post-Conviction Relief

On March 30, 2007, Razo, proceeding pro se, filed a petition for post-conviction relief, pursuant to Hawaii Rules of Penal Procedure (HRPP) Rule 40.  Razo claimed ineffective assistance of counsel (IAC) for his appellate counsel's failure to raise federal constitutional issues on appeal, thereby allegedly prejudicing Razo's ability to challenge his conviction in federal court.[5]  Razo later added seven supplemental Addendum issues, unconnected to his IAC claim.[6]

---

[5]The omitted federal issues were: (1) a Fifth Amendment claim alleging a *Miranda* violation; (2) an Eighth Amendment claim alleging insufficient evidence for Attempted PDD1; and two Fourteenth Amendment due process claims, based on allegedly erroneous (3) PDD2 jury instruction #19; and (4) PDD1 jury instruction #26.

[6]These were: (1) a speedy trial violation under the federal and state constitutions; (2) insufficiency of the evidence; (3) statute of limitation violation; (4) inaccurate weight measurement of the evidence; (5) improper identification of the evidence; (6) coerced confession; and (7) double jeopardy.

The circuit court denied the Rule 40 Petition, holding first that Razo's appellate counsel was not ineffective under Hawaii's standard for evaluating IAC claims.[7]  Specifically, appellate counsel was not ineffective for failure to raise: (1) a *Miranda* claim, because the trial court conducted an extensive pre-trial voluntariness hearing and determined that Razo's statements were knowing and voluntary; (2) an insufficiency of the evidence claim under the Eighth Amendment, because this claim was patently frivolous; and (3) federal due process claims concerning jury instructions #19 and #26, because these claims were without merit under the prevailing federal standard and were raised and rejected on direct appeal, procedurally barring further review under HRPP 40(a)(3) and (g)(2).[8]  The circuit

---

[7]In Hawaii, counsel is ineffective when his or her performance contains specific errors or omissions reflecting a lack of skill, judgment or diligence and such errors resulted in either the withdrawal or substantial impairment of a potentially meritorious defense, specifically rejecting the federal requirement of actual prejudice. *See State v. Briones*, 848 P.2d 966, 977 (Haw. 1993), *compare Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984) (holding that counsel is ineffective when his or her performance was objectively unreasonable and actually prejudiced the defense).

[8]HRPP 40(a)(3) states:

*Inapplicability*. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the
(continued...)

court then held that Razo's seven Addendum issues were each
waived under HRPP 40(a)(3) for failure to raise them on direct
appeal, and thus, were procedurally barred.  The circuit court
additionally found that Addendum issues 1 and 6 were raised and
ruled upon prior to trial, 2, 4, and 5 were patently frivolous,
and 3 and 7 were meritless.

Razo appealed, raising six points of error: (1)
ineffective assistance of appellate counsel for failure to argue
federal constitutional issues, denying him due process under the
Fourteenth Amendment; (2) Speedy trial violation under HRPP 48,
in violation of the Sixth Amendment and the due process clause of
the Fourteenth Amendment; (3) insufficient evidence to convict

---

[8](...continued)
trial, at the trial, on appeal, in a habeas corpus
proceeding or any other proceeding actually conducted,
or in a prior proceeding actually initiated under this
rule, and the petitioner is unable to prove the
existence of extraordinary circumstances to justify the
petitioner's failure to raise the issue. There is a
rebuttable presumption that a failure to appeal a
ruling or to raise an issue is a knowing and
understanding failure.

HRPP 40(g)(2) states:

(g) **Disposition.**

(2) *Against the Petitioner*.  The court may dismiss a
petition at any time upon finding the petition is
patently frivolous, the issues have been previously
raised and ruled upon, or the issues were waived. The
court may deny a petition upon determining the
allegations and arguments have no merit.

for Attempted PDD1; (4) statute of limitation violation; (5) inaccurate measurement of the evidence; and (6) improper identification of the evidence.

On January 23, 2009, the ICA affirmed, holding that each of Razo's points on appeal were procedurally defaulted and therefore barred from review.  Specifically, the ICA held: (1) Razo's failure to support his IAC and statute of limitation claims with supporting facts or argument waived them under Hawaii Rules of Appellate Procedure (HRAP) 28(b)(7);[9] (2) Razo's failure to raise his speedy trial claim on direct appeal, and establish extraordinary circumstances for this, waived the claim under HRPP 40(a)(3), and Razo failed to establish circuit court error in denying the pre-trial motion to dismiss on this issue; (3) Razo's insufficient evidence claim was raised and rejected on direct appeal and further relief was unavailable under HRPP 40(a)(3); and (4) Razo's failure to raise his improper admission of the

---

[9]HRAP 28(b)(7) states:

(b) **Opening Brief**. Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

* * *

(7) The argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. . . . Points not argued may be deemed waived.

police expert's testimony regarding the weight and composition of

the drug evidence claim on direct appeal, and to establish

extraordinary circumstances for this, waived the claim under HRPP

40(a)(3), and Razo admitted to possessing 1/8 of an ounce of

methamphetamine, thus any error regarding admission of this

testimony was harmless beyond a reasonable doubt.  The Hawaii

Supreme Court denied *certiorari* on February 23, 2009.

## II.  LEGAL STANDARD

This Petition is governed by the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254.

*Woodford v. Garceau*, 538 U.S. 202, 204 (2003); *Brown v. Farwell*,

525 F.3d 787, 792 (9th Cir. 2008).  Under the AEDPA, habeas

corpus relief may not be granted on any claim that was

adjudicated on the merits in state court unless the adjudication

"resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as

determined by the Supreme Court of the United States," or

"resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d)(1),(2);

*Williams v. Taylor*, 529 U.S. 362, 402-04 (2000).

A decision is contrary to federal law if the state

court applies a rule of law that contradicts Supreme Court

precedent or makes a determination contrary to a Supreme Court

decision on materially indistinguishable facts. *Brown*, 525 F.3d at 792. A state court unreasonably applies federal law when its application of Supreme Court precedent to the facts of petitioner's case is objectively unreasonable. *Id.* at 793 (citation omitted). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (*quoting Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)); 28 U.S.C. § 2254(e)(1)).

Relief may be granted on a federal habeas petition only if the state court error caused "actual prejudice" or had a "substantial and injurious effect or influence" in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In other words, relief may not be granted if a petitioner merely shows that there is a reasonable possibility that the error contributed to the verdict. *Id.*

### III.  <u>DISCUSSION</u>

The Petition raises four somewhat cryptic grounds for relief: (1) appellate counsel was ineffective for failing to raise (unspecified) federal issues on direct appeal, hindering Razo's ability to pursue federal habeas relief (Ground One); (2) a speedy trial violation under HRPP 48, for the alleged failure to commence trial within "the 180 days allowed by law" (Ground Two); (3) "Evidence which led to conviction" (Ground Three); and

8

(4) "Attempt to Distribute" (Ground Four).

**A.   The State's Waiver of Exhaustion and Procedural Default Defenses**

A petition for writ of habeas corpus may not be granted unless the petitioner has exhausted available state court remedies. 28 U.S.C. § 2254(b); *Baldwin v. Reese*, 541 U.S. 27 (2004); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). A claim is exhausted when: (1) no remedy remains available to the petitioner in state court; or (2) there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the petitioner. 28 U.S.C. § 2254(b)(1)(A-B).

To properly exhaust state remedies, a petitioner must "fairly present his claim in *each* appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (emphasis added); *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). To fairly present a claim, the petitioner must adequately describe its factual or legal bases and alert the state court "that . . . [he is] asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-366; *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Mere similarity between a claim raised in state court and a claim raised in a federal habeas petition is insufficient. *Duncan*, 513 U.S. at 365-366.

In some instances a claim can be technically exhausted

9

even though the state court did not address its merits.  This is referred to as "procedural bar" or "procedural default."  A claim is procedurally defaulted if the state court declined to address the issue on its merits for procedural reasons.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002).  Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons.  *Id.*  Procedural bar provides an independent and adequate state-law ground for the conviction and sentence and prevents federal habeas corpus review unless the petitioner can demonstrate cause and prejudice for failing to raise the claim in the state proceedings, or actual innocence.  *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier*, 477 U.S. 478, 485-495 (1986); *Franklin*, 290 F.3d at 1231.

To summarize, failure to exhaust and procedural default are distinct, yet interrelated concepts.  *See Franklin*, 290 F.3d at 1230-1231.  Under both doctrines, however, the federal court may be required to refuse to hear a habeas claim.  *Id.*  The difference is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims.  *Id.*  In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default . . . the district court dismisses the petition because

the petitioner has no further recourse in state court." *Id.* at 1231.

Exhaustion and procedural default are affirmative defenses. *See Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003); *Franklin*, 290 F.3d at 1239. While the state must explicitly waive an exhaustion defense, *see* § 2254(b)(3), procedural default may be waived by the state's failure to raise it in the first responsive pleading to a federal habeas petition. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (citing Fed. R. Civ. P. 8(c), 12(b) & (g));[10] *Chaker v. Crogan*, 428 F.3d 1215, 1220-21 (9th Cir. 2005) (citing *Franklin*, 290 F.3d at 1229); *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982) ("the state's representative is in the best position to identify the procedural default and argue in federal court that the state has an interest in barring federal review of the merits.").

Respondent expressly waives an exhaustion defense here. *See* Ans. at 20 ("Razo properly exhausted the grounds for relief in his Petition."). Although it is clear that several of Razo's claims were never fairly presented as federal claims to the state courts, thus, they were never "properly exhausted," these claims are now procedurally barred and are therefore technically exhausted. Inexplicably, however, despite clear and abundant

---

[10]The Federal Rules of Civil Procedure apply to habeas cases to the extent that they are not inconsistent with the Habeas Rules. Fed. R. Civ. P. 11; 28 U.S.C. § 2254.

evidence in the record to the contrary, Respondent waived any procedural default defense by failing to argue this defense in its Answer.

The court therefore addresses Razo's claims on their merits and looks to the last reasoned state court decision to determine how the AEDPA applies to the determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991) (explaining that a federal habeas court must look to the last reasoned state decision that ruled on an issue beyond the context of procedural default to determine the merits of a claim); *see, e.g.*, *Bailey v. Rae*, 339 F.3d 1107, 1112-13 (9th Cir. 2003) (explaining that, where procedural default is not at issue, identifying the last explained decision is relevant for purposes of applying AEDPA's standards); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) ("In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision.").

## B.   Grounds Three and Four: Insufficient Evidence to Convict for Attempted PDD1[11]

In his Memorandum in Support, Razo explains that Grounds Three and Four center on his allegations that there was insufficient evidence to convict him of Attempted PDD1 under HRS

---

[11]The court addresses these claims first because a determination here also bears on whether Razo's appellate counsel was ineffective.

§ 712-1241 (Supp. 2003) & § 705-500 (1993).[12]  Razo argues that the evidence was insufficient to show that he took a substantial step in the predicate offense of PDD1, to sustain a conviction for Attempted PDD1.

When presented with an insufficiency of the evidence claim on habeas review, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a

---

[12] When Razo was convicted, these statutes provided in relevant part:

**§ 712-1241 Promoting a dangerous drug in the first degree.** (1) A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly:
            ****
   (b) Distributes:
            ****
   (ii) One or more preparations, compounds, mixtures, or substances of an aggregate weight of:

   (A) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

**§ 705-500 Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
            ****
   (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
            ****
(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Sufficiency claims are judged by the elements defined by state

law.  *Id.* at 324, n.16.  This inquiry does not require the

federal habeas court to substitute its own judgment for that of

the trier of fact.  *Id.* at 318-19; *Juan H. v. Allen*, 408 F.3d

1262, 1278 n.14 (9th Cir. 2005) ("It is not the province of a

federal habeas court to reexamine state-court determinations on

state-law questions.").  The district court should look to state

law to establish the elements of the crime, "and then turn to the

federal question of whether the [state court] was objectively

unreasonable in concluding that" sufficient evidence supported

the conviction.  *Id.*

  At trial, the prosecution adduced evidence that Razo

possessed 25.9 grams of methamphetamine divided into eight

plastic packets, approximately forty empty plastic packets that

are commonly used to distribute methamphetamine, the larger

packets sufficient to hold 1/8-1/4 ounces of methamphetamine, the

smaller packets sufficient to hold 1/2-1 gram of methamphetamine,

a gram scale, measuring spoons, straws, marijuana, and other drug

paraphernalia.  (Resp.'s Ex. M, 42-76.)

  Maui Police Officer Esperanza, who was a Vice Narcotics

Division police officer for approximately two years at the time

of trial, opined that the evidence, including the excessive

amount of methamphetamine seized, the gram scale, the different-

sized plastic bags used for repackaging the methamphetamine, the measuring spoons, the straws, the street value of the drugs, and Razo's statements that he was "fronted" half the drugs, indicated that Razo was a dealer.

Razo's theory at trial was that he was a methamphetamine addict but not a distributor, therefore he did not contest Counts 1 through 3, charging him with possession of 1/8 ounce or more of methamphetamine, marijuana, and drug paraphernalia, but only contested Count 4, the Attempted PDD1 charge. (*See* Resp.'s Ex. N, 39:1-3.)[13]  Razo admitted that he: bought methamphetamine in large quantities numerous times, owned the gram scale recovered during the search, owned the plastic packets, knew that there was almost an ounce of methamphetamine in his backpack when it was seized, and was a daily methamphetamine user. (*Id.* 41:10-20; 42:12-18, 54:23-25; 55:1-2; 59:5-9; 93:1-13.)  Razo, however, testified that he bought methamphetamine by the ounce for his own personal use, then weighed and divided it into smaller packets to prevent an overdose and to save money.

On direct appeal, the ICA held that:

When viewed in the light most favorable to the

---

[13]

Q. (Razo's Attorney) Are you blaming anybody else for counts one two and three in the indictment in this case?

A.(Razo) No, I'm not.

prosecution, *State v. Tamura*, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981), it was reasonable for the jury to infer that: 1) Razo was a methamphetamine dealer; 2) Razo had purchased the methamphetamine found in his backpack with the intent to sell a portion to pay for the half-ounce that his supplier had fronted; 3) Razo intended to sell at least one-eighth ounce, given the amount of money he owed his supplier and the evidence regarding the prices at which different quantities of methamphetamine were sold; and 4) Razo had obtained the methamphetamine and the empty plastic packets, as well as the digital gram scale and the measuring spoon seized by the police, as a substantial step in a course of conduct intended to culminate in the distribution of at least one-eighth ounce of methamphetamine. We conclude that there was sufficient evidence to support Razo's Attempted PDD1 conviction.

(Resp.'s Ex. W, *State v. Razo*, No. 26604, 6-7, 2006 WL 2578984 *1-*2 (unpub.) (Haw. App. Sept. 8, 2006).)

The ICA's analysis of Razo's sufficiency of the evidence claim was not contrary to nor an unreasonable application of clearly established federal law.  Although it did not cite the Supreme Court's ruling in *Jackson*, the ICA's decision was consistent with the principles set forth in *Jackson*. The ICA carefully addressed Razo's sufficiency of the evidence claim, as well as Razo's erroneous Attempted PDD1 jury instruction claim, in light of the elements required to prove Attempted PDD1.  The ICA reviewed the evidence, drew all inferences in favor of the prosecution, and held that the evidence was strongly corroborative, thus sufficient, to show that Razo took a substantial step toward committing PDD1.  This holding necessarily incorporated the *Jackson* inquiry and implies

a finding that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Razo argues that, because Esperanza had only been a narcotics officer for approximately six months when he arrested Razo, Esperanza did not have sufficient experience to opine that the evidence suggested that Razo was a drug dealer rather than simply a drug user, rendering Esperanza's testimony "speculative" and "hearsay." (Pet'r Reply at 2.)  This argument fails because the record reflects that Esperanza had been a vice narcotics officer for two years prior to Razo's trial, when Esperanza gave his professional opinion regarding the evidence seized. Moreover, Esperanza testified as to when he became a narcotics officer, and the jury nonetheless credited Esperanza's testimony over Razo's, a determination that is entitled to great deference. *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (holding that a jury's credibility determinations are entitled to near-total deference.")

Razo next argues that the ICA failed to follow the precedent established in *State v. Ugalino*, 111 P.3d 39, 107 Haw. 144 (Haw. App. 2005) and other out-of-state cases that Razo alleges are directly on point, wherein the evidence was found to be insufficient. In *Ugalino*, the ICA held that the evidence was insufficient to show that Ugalino had taken a substantial step to convict him of Attempted PDD1, "based on *the particular evidence*

*adduced at Ugalino's trial*[.]" *Id.* at 53 (emphasis added).  The evidence showed that Ugalino was a methamphetamine user who possessed 17.44 grams of methamphetamine, eight empty ziplock packets capable of holding .5 grams of methamphetamine but normally used to hold only .1-.2 grams, 2 packets with residue, $1,551, a glass smoking pipe, and a lighter.  The State failed to adduce evidence showing how much methamphetamine Ugalino had sold or consumed in the past, the quantity of methamphetamine that a typical user would hold for consumption, and how much of the 17.44 grams of methamphetamine Ugalino would likely use versus how much he would sell.  The ICA held that, based on the expert's testimony about the size of the empty packets, and the lack of any other corroborating evidence, the jury could only infer that Ugalino intended to distribute less than 1/8 ounce of methamphetamine.  *Ugalino*, 111 P.3d at 53-54.

These facts are not "on point" with the facts presented at Razo's trial.  Razo's evidence showed that he had bought large (ounce) quantities of methamphetamine numerous times, consumed up to 1/8 ounce of methamphetamine per day at times, possessed approximately 25 grams of methamphetamine when arrested, a gram scale, measuring spoons and straws, and 40 empty plastic packets.  Esperanza testified to the amount of methamphetamine a typical user would consume, the amount a typical user would hold for consumption, the street value of the methamphetamine found in

Razo's possession, and that the twenty large plastic packets would hold 1/8-1/4 ounces while the smaller packets would hold 1-.5 grams of methamphetamine.  This evidence is more than sufficient, under *Ugalino* and the other cases Razo cited, for a reasonable jury to find the intent to distribute 1/8 ounce or more of methamphetamine, and for the ICA and the Hawaii Supreme Court to discount Razo's challenge on this issue.

Razo also argues that criminologist Julie Wood's testimony as to the weight and composition of the drug evidence was improperly admitted, based on *State v. Cambra*, No. 26746, 2007 WL 1169631 (Haw. Apr. 18, 2007), and *Melendez-Diaz v. Massachusetts*, --- U.S. ---, 129 S. Ct. 2527 (2009) (holding that the admission of laboratory analysts' certificates and affidavits, without the testimony of the analysts themselves, violated petitioner's right to confront the witnesses against him).  As noted, Razo admitted that he possessed more than 1/8 ounce of methamphetamine.  Thus the admission of Wood's testimony on the weight and chemical composition of the drug evidence had no substantial or injurious effect on the jury's verdict beyond a reasonable doubt.  *See Brecht*, 507 U.S. at 623.

Second, insofar as Razo contests an alleged lack of foundation for the accuracy of the testing equipment underpinning Wood's testimony, under *State v. Wallace*, 910 P.2d 695 (1996) and *Cambra*, No. 26746, this argument is misplaced.  Only "clearly

established Federal law," consisting of the holdings of the
Supreme Court at the time the petitioner's state court conviction
became final, governs federal habeas review.  28 U.S. C.
§ 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  The
Hawaii courts' decisions in *Wallace* and *Cambra* do not constitute
clearly established federal law.

To the extent that Razo believes that *Melendez-Diaz*
bolsters his argument and transforms it into a federal claim, he
is mistaken.  The majority in *Melendez-Diaz* explicitly rejected
the suggestion that the Confrontation Clause requires that every
person whose testimony might be relevant to the authenticity of a
sample or accuracy of a testing device must appear in person as
part of the prosecution's case.  *See* 129 S. Ct. at 2532 n.1
("[W]e do not hold, *and it is not the case*, that anyone whose
testimony may be relevant in establishing the chain of custody,
authenticity of the sample, or accuracy of the testing device,
must appear in person as part of the prosecution's case")
(emphasis added).  Because Razo had a full opportunity to
confront Wood at trial, there was no Confrontation Clause
violation, and as noted, because Razo admitted that he possessed
more than 1/8 ounce of methamphetamine, he suffered no prejudice
as a result of Wood's testimony on the weight or chemical
composition of the evidence.  *See id.* at 2542 n.14 (noting that,
despite finding the analysts' certificates violated defendant's

20

Confrontation Clause rights, the resulting error was subject to

harmless error review).

This court does not determine whether it is satisfied

that the evidence established guilt beyond a reasonable doubt,

see *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), but only

"whether, 'after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt.'"

*See id.* (quoting *Jackson*, 443 U.S. at 319).  The court FINDS that

the evidence was sufficient for the jury to find that Razo was

guilty of Attempted PDD1 beyond a reasonable doubt, and that the

ICA's determination of this issue was neither contrary to nor an

unreasonable application of federal law.  The court therefore

RECOMMENDS that Grounds Three and Four be DENIED WITH PREJUDICE.

C.   **Ground One: Ineffective Assistance of Appellate Counsel**

Razo asserts, without further explanation or statement

of facts, that his appellate counsel was ineffective for failing

to "address the Federal Constitutional violations in the Direct

Appeal, thereby hindering appellant to pursue further Review by

Federal District Court on the merits at issue."  (Pet. at 6.)

Razo does not specify in his Petition, Memorandum in Support, or

Reply what federal issues his appellate counsel failed to

address, or explain how the omission of these unspecified federal

issues constituted ineffective assistance of appellate counsel.

21

### 1.   *Razo's IAC Claims Are Unsupported and Conclusory*

Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) requires a federal habeas petition to state the facts supporting each ground for relief.  Habeas Rules 2(c)(2); *see also Mayle v. Felix*, 545 U.S. 644, 654-55 (2005) (Habeas Rule 2(c) imposes "a more demanding" pleading standard than the Federal Rules of Civil Procedure require for ordinary civil cases).  Habeas Rule 2(c) instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground."  Additionally, the court's form petition directed Razo to "[s]tate every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. . . .  State the <u>facts</u> supporting each ground." (Pet. at 6.)

A federal habeas petitioner "is expected to state facts that point to a real possibility of constitutional error."  *Wacht v. Cardwell*, 604 F.2d 1245, 1247 (9th Cir. 1979).  Moreover, "'[t]he Court is not required to sift through the state court records of habeas [petitioners] . . . to determine whether sufficient facts exist to support the claim for relief.'"  *Harris v. Carter*, 2009 WL 2253221 *12 (W.D. Wash. Mar. 18, 2009), *as modified by* 2009 WL 1763323 (W.D. Wash. June 18, 2009) (citing *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990)).  When a

22

habeas claim makes only conclusory allegations, as here, the petitioner is not entitled to federal habeas relief.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations . . . [un]supported by a statement of specific facts do not warrant habeas relief."); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (same); *see also Cox v. Del Papa*, 542 F.3d 669, 681 (9th Cir. 2008) ("Without any specification of the mitigating evidence that counsel failed to unearth, Cox's [IAC] claim must fail.").  Razo presents no facts supporting his claim that appellate counsel was ineffective for failure to raise unspecified federal issues.  Accordingly, the court FINDS that Ground One is conclusory and unsupported and RECOMMENDS that it be DISMISSED for failure to state a claim.

> ### 2.  *Razo's IAC Claims Are Meritless*

Alternatively, insofar as Razo alleges the same bases in support of Ground One that he presented to the circuit court,[14] Razo's IAC claims fail on their merits.

To show ineffective assistance of counsel a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88; *Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to appellate

---

[14]As noted above, Razo failed to present any facts supporting this claim to the ICA, which denied the claim on that basis.

counsel); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989) (same).  After petitioner identifies the acts or omissions that are not the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Strickland,* 466 U.S. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, petitioner must establish that he was actually prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 693-94.  To demonstrate prejudice due to appellate counsel's performance, a petitioner must show that, but for appellate counsel's errors, he probably would have prevailed on appeal.  *Miller*, 882 F.2d at 1434 n.9.

A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

Appellate counsel is not obligated to raise meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88.  Nor does an indigent defendant "have a constitutional

right to compel appointed counsel to press nonfrivolous points

. . . if counsel, as a matter of professional judgment, decides

not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751

(1983).  Appellate counsel "must be allowed to decide what issues

are to be pressed[,]" otherwise counsel's professional evaluation

would be "seriously undermined." *Id.; see also Smith v. Stewart*,

140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (stating that counsel is

not required to file "kitchen-sink briefs" because it "is not

necessary, and is not even particularly good appellate

advocacy.").  Thus, appellate counsel is not deficient for

failing to raise a weak issue.  *See Miller*, 882 F.2d at 1434.

     i.   *Fifth Amendment IAC Claim*

       "No person . . . shall be compelled in any criminal

case to be a witness against himself. . . ."  U.S. Const., Amend.

5.  A person subjected to custodial interrogation must be advised

that he has the right to remain silent, that statements made can

be used against him, that he has the right to counsel, and that

he has the right to have counsel appointed. *Miranda v. Arizona*,

384 U.S. 436, 467-73 (1966).  These warnings must precede any

custodial interrogation. *Id.* at 444.  Once properly advised of

his rights, an accused may waive them voluntarily, knowingly and

intelligently. *Id.* at 475.

       Whether a waiver of *Miranda* rights is knowing,

intelligent, and voluntary is a legal question which the federal

court resolves independently. *Miller v. Fenton*, 474 U.S. 104, 115 (1985). The state court's determination of the underlying facts, however, is entitled to a presumption of correctness. *Id.* at 117; *Villafuerte v. Stewart*, 111 F.3d 616, 626 (9th Cir. 1997); 28 U.S.C. § 2254(e)(1). In analyzing the voluntariness of a waiver, the focus is on the absence of police overreaching. *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir. 1997) (quoting *Colorado v. Connelly*, 479 U.S. 157, 170 (1986)). The test for voluntariness is whether, under the totality of the circumstances, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir. 2002) (citation and internal quotation marks omitted).

"However, if interrogators obtained a confession after *Miranda* warnings and a valid waiver, the confession was likely voluntary." *DeWeaver v. Runnels*, 556 F.3d 995, 1003 (9th Cir. 2009) (citing *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) ("[G]iving the warnings and getting a waiver has generally produced a virtual ticket of admissibility.")); *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are

26

rare").

          After a careful review of the transcript of the March
22, 2004 voluntariness hearing, this court agrees with the
circuit court's holding that Razo voluntarily, knowingly, and
intelligently waived his rights to remain silent before being
questioned by the police. (*See* Resp.'s Ex. M 3-41.)  The record
shows that Razo was twenty-seven years old when he gave the
challenged statement, could read and write, and worked full-time
for Federal Express.  At the hearing, Officer Esperanza testified
that Razo: was in custody at the police station; spoke coherently
and did not appear intoxicated or impaired; was given a *Miranda*
warning and waiver form; read each line aloud and after each
line, stated that he understood, so that Esperanza could
determine that Razo could read and understand his rights; at the
conclusion of this process stated again that he understood his
rights and signed and dated the forms.  Razo then made an oral
statement in response to Esperanza's questions, while Esperanza
and Sergeant Kenui took notes, and afterward wrote his statement
using Esperanza's notes.  Esperanza also stated that it was
Sergeant Clarence Kenui's decision whether a suspect would be
released pending investigation.  Esperanza testified that Razo
was never promised that he would be released only if he provided
a statement, and that no improper promise was made prior to the
*Miranda* warning, or to Razo's waiving his rights or making a

statement.   This whole proceeding took approximately one hour.

Razo did not dispute Esperanza's recitation of events concerning the reading of his rights.   Razo admitted to signing the waiver and giving an oral and a written statement.   Razo also claimed that he was not clear-minded when he was arrested due to his methamphetamine habit.   Razo stated that he would have said anything to be released, that he was unsure how long he would be released while the police continued their investigation, but that didn't matter to him because he wanted to be released for any amount of time.   Razo also stated that he discussed cooperating with the police and that some of his statements were false. Razo's argument, though not explicit, was that he was coerced to make a statement based on the promise of release pending investigation.

There is no dispute that Razo read and signed the waiver form.   The circuit court made a credibility determination between Razo and Esperanza, and determined that Esperanza's testimony was the more credible.   "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]"   *Miller-El v. Cockrell*, 537 U.S.

322, 340 (2003); 28 U.S.C. § 2254(d)(2); *Cook v. Schriro*, 538 F.3d 1000, 1015 (9th Cir. 2008) ("A state court's factual determination may not be overturned unless we cannot 'reasonably conclude that the finding is supported by the record.'") (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

The circuit court's determination of this factual issue was objectively reasonable, and was neither contrary to, nor an unreasonable determination of the facts in light of the evidence presented at the March 22, 2004 voluntariness hearing. Further, even if Esperanza told Razo that he would likely be released pending further investigation before Razo made a statement, but after Razo read and signed the *Miranda* waiver, as Razo testified, this was not a promise that was so coercive as to have overborne Razo's will. Razo was an educated twenty-seven year old gainfully employed adult. He was coherent and attested numerous times that he understood the warnings before he gave any statement. Razo was only in custody for approximately on hour. Razo's fervent hope that he might be released while the police continued investigating his crime simply does not equate to police overreaching.

Finally, even assuming that Razo's confession was involuntary, it did not have a "substantial and injurious effect or influence in determining the jury's verdict," because Razo admitted at trial to substantially the same details as he had

made in his statements.  *See Brecht*, 507 U.S. at 623 (standard
for determining whether habeas relief must be granted is whether
error "had substantial and injurious effect or influence in
determining the jury's verdict") (citation omitted); *Doody v.
Schriro*, 548 F.3d 847, 870-71 (9th Cir. 2008) (applying *Brecht*
harmless error standard to erroneous admission of confession on
federal habeas review).

        The circuit court's rejection of Razo's IAC claim based
on appellate counsel's failure to argue a *Miranda* violation was
not contrary to, or an unreasonable application of clearly
established federal law and did not constitute an unreasonable
determination of the facts in light of the evidence presented.
This court finds that Razo was not prejudiced by appellate
counsel's failure to raise a *Miranda* claim and that there is no
reasonable probability that the appeal would have been decided
differently had appellate counsel raised the claim.

        ii.  *Eighth Amendment IAC Claim*

        The Eighth Amendment proscribes punishments which
involve the "unnecessary and wanton infliction of pain."  *Rhodes
v. Chapman*, 452 U.S. 337, 347 (1981); *Gregg v. Georgia*, 428 U.S.
153, 173 (1976).  Razo does not explain here, nor did he to the
circuit court, how his appellate counsel's failure to raise his
insufficiency of the evidence claim on appeal violated the Eighth
Amendment.  This court agrees with the circuit court that this

claim is frivolous and finds that appellate counsel was not obliged to raise it on appeal.

> iii.  *Fourteenth Amendment Due Process Claims Based on Allegedly Erroneous Jury Instructions #19 and #26*

Improper jury instructions constitute grounds for habeas relief under federal law only if the instructions "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)(quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt." *Townsend v. Knowles*, 562 F.3d 1200, 1209 (9th Cir. 2009).  "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).  The challenged jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (internal quotation marks and citation omitted).  "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437.  The law presumes that the jury follows the instructions given.

Razo's appellate counsel challenged jury instructions #19 and #26 on appeal under state law.[15]  The ICA held that, although it did not endorse the Attempted PDD1 instruction, the jury was correctly instructed that the prosecution had to prove that Razo "knowingly distribute[d]" 1/8 ounce or more of methamphetamine, and to prove Attempted PDD1, the prosecution had to prove that Razo "intentionally attempted to distribute" 1/8 ounce of methamphetamine or more.  (Resp.'s Ex. W, *State v. Razo*, 2006 WL 2578984 *1-*2.)  The ICA then found that "any error in the circuit court's failure to break down the PDD1 offense definition into its elements and the mental state required for each element was harmless beyond a reasonable doubt."  *Id.* *2.

As to the PDD2 instruction, the ICA held that, although

---

[15]Hawaii's standard for jury instruction challenges closely tracks the federal standard:

> [E]rroneous instructions are presumptively harmful and are a ground for reversal *unless it affirmatively appears from the record as a whole that the error was not prejudicial.*

> [E]rror is not to be viewed in isolation and considered purely in the abstract. *It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.* In that context, the real question becomes whether there is a reasonable possibility that the error may have contributed to conviction.

*State v. Cordeiro*, 56 P.3d 692, 705 (Haw. 2002)(citations and internal quotation signals omitted) (emphasis added).

it was erroneous,[16] because Razo "essentially conceded his guilt on the PDD2 offense" by admitting to possession of at least 1/8 of an ounce of methamphetamine for his own use, "there was no reasonable possibility that any error in the . . . PDD2 instruction contributed to the jury's finding that Razo was guilty" of PDD2. *Id.* at *4.

First, the ICA's determination on these claims was neither contrary to nor an unreasonable application of federal law. Although it did not cite *Estelle v. McGuire* and its progeny, the ICA's decision was consistent with the principles set forth in *Estelle*. The ICA carefully addressed Razo's jury instruction claims in light of the elements required to prove the two charges, the jury instructions as given, and the entire record, and determined that the PDD1 instruction was sufficient, and the PDD2 instruction, although erroneous, was harmless beyond a reasonable doubt. This holding necessarily incorporated *Estelle's* inquiry and implies a finding that based on the entire record there was no violation of due process. Moreover, Razo cannot simply transform his state jury instruction claims into federal claims simply by now citing to the due process clause. *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (citing

---

[16]The PDD2 instruction was erroneous because it did not require the jury to find that Razo knew the substance he possessed was methamphetamine. *See State v. Razo*, 2006 WL 2578984 *4.

*Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997)).

Second, this court must defer to the ICA's determination that the Attempted PDD1 instruction was sufficient. *See Engle v. Isaac*, 456 U.S. 107, 119-21, n.21 (1982)(stating that a challenge to the correctness of self-defense instruction under state law provides no basis for federal habeas relief). This court lacks the authority to grant habeas relief on Razo's challenge to the Attempted PDD1 jury instructions because the manner in which the state court interprets its own law is an issue of state law.  28 U.S.C. § 2254; *Hendricks v. Vasquez*, 974 F.2d 1099, 1107 (9th Cir. 1992); *Mitchell v. Goldsmith*, 878 F.2d 319, 324 (9th Cir. 1989)(finding that habeas corpus relief was unavailable for petitioner's claim that jury instructions did not comply with state law).

Third, because the circuit court merged the PDD2 charge with the Attempted PDD1 charge, and only sentenced Razo for his conviction of Attempted PDD1, there is no PDD2 judgment to challenge under § 2254, and no prejudice attributable to the erroneous instruction.  *See* HRS § 701-109(1)[17]; *see also State v.*

---

[17]HRS § 701-109(1)(1993) provides:

(1) When the same conduct of a defendant may establish
an element of more than one offense, the defendant may
be prosecuted for each offense of which such conduct is
an element. The defendant may not, however, be
convicted of more than one offense if:

(continued...)

*Padilla*, 164 P.3d 765, 774-76 (Haw. App. 2007) (concluding that conviction on two charges is permissible under the statute, as long as one charge is dismissed and judgment of conviction and sentence is imposed on only one charge).  Although not explicit in the record, based on *Padilla*'s holding, it appears that when the circuit court merged Counts 1 and 4, the PDD2 charge was dismissed.  This conclusion is also supported by the ICA's finding that Razo's challenge to the PDD2 instruction was mooted by the merger of the two charges.  (*See* Resp.'s Ex. W, *State v. Razo*, 2006 WL 2578984 at *4.)

Moreover, under federal law, there is no judgment of conviction until a sentence is imposed.  *See Burton v. Stewart*, 549 U.S. 147, 156 (2007) (stating that "[f]inal judgment in a criminal case means sentence.  The sentence is the judgment.")

---

[17](...continued)
(a) One offense is included in the other, as defined in subsection (4) of this section; or

(b) One offense consists only of a conspiracy or solicitation to commit the other; or

(c) Inconsistent findings of fact are required to establish the commission of the offenses; or

(d) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

(citing *Berman v. United States*, 302 U.S. 211, 212 (1937)); *see also Ferreira v. Sec'y Dep't of Corr.*, 494 F.3d 1286, 1293 (11th Cir. 2007) (stating "*Burton* makes clear that . . . the judgment of conviction and the sentencing judgment *together* form the judgment that imprisons the petitioner."), *cert. denied*, --- U.S. ----, 129 S. Ct. 1033 (2009) (emphasis in original).  For the federal court to have jurisdiction over a § 2254 petition, the habeas petitioner must, as of the date of the filing of the habeas petition, be "in custody" under the sentence/conviction being attacked by the petition.  *See, e.g.*, *Maleng v. Cook*, 490 U.S. 488, 492 (1989).  Here, there is no PDD2 conviction or sentence, the erroneous jury instruction is a nullity, Razo has no basis to challenge the instruction, and this court is without jurisdiction over this claim.

Thus, the court finds that appellate counsel's failure to raise due process claims based on the allegedly erroneous jury instructions, when judged by the record as a whole, including Razo's testimony, other testimony adduced at trial, and the circuit court's merger of the PDD2 charge with the Attempted PDD1 charge, was not deficient.

Based on the foregoing the court FINDS and RECOMMENDS that Ground One be DENIED.

**D.   Ground Two: Speedy Trial Violation Under Hawaii Law**

Razo fails to present any facts, argument or

36

explanation in support of this claim, and for the same reasons as detailed *supra*, § III(C)(1), the court finds and recommends that this claim be dismissed for failure to state a claim.  Further, Razo states only that his rights under HRPP 48 were violated when the state allegedly failed to commence his trial "within the 180 days allowed by law."  HRPP 48 affords Razo no relief in this federal habeas corpus proceeding.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  Accordingly, the court finds and recommends that Ground Two be DENIED.

## IV.   CONCLUSION

The court FINDS that Razo is not being held in violation of the constitution or laws of the United States, and that the state court's determination of his claims was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  The court therefore RECOMMENDS that the Petition be DENIED with prejudice.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, February 10, 2010.



Kevin S.C. Chang
United States Magistrate Judge

37

**<u>NOTICE</u>**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to 28 U.S.C. § 636(b)(1).  Within fourteen [14] days after service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. LR74.2.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen [14] days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

*Razo v. Thomas*, Civ. No. 09-00462 SOM-KSC; prose attys\Habeas\DMP\2010\Merits\Razo 09-00462 SOM-KSC #2 (F&R dny merits)